# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

       Plaintiff,

vs.                                No. CR  06-1537 JB

ROBERTO CARLOS HERNANDEZ-CASTILLO,

       Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Defendant's Motion for Downward Departure and Sentencing Memorandum, filed January 29, 2007 (Doc. 26)("Sentencing Memorandum"). The Court held a sentencing hearing on February 8, 2007. The primary issues are: (i) whether the Court should grant the Defendant Roberto Carlos Hernandez-Castillo a downward departure under the United States Sentencing Guidelines because of extraordinary family circumstances; (ii) whether the Court should grant a downward departure to remedy sentencing disparities between similarly situated defendants; and  (iii) whether the Court should vary from the sentence the Guidelines recommend.  Because the Court does not believe that Hernandez-Castillo's family circumstances warrant a downward departure under the Guidelines, and because the Court believes that the Guidelines produce a reasonable sentence in this case that is sufficient, without being greater than necessary, to achieve federal sentencing goals, the Court will deny the motion and impose a guideline sentence.

## FACTUAL BACKGROUND

On November 7, 2005, Hernandez-Castillo was convicted of criminal sexual penetration in

violation N.M. Stat. Ann. § 30-9-11(D)(5) after pleading no contest in the State of New Mexico Second Judicial District. See State v. Castillo, No. D-0202-CR-200200590 (N.M. Second Jud. Dist. 2002)(docket available at www.nmcourts.com/caselookup). The New Mexico state court sentenced Hernandez-Castillo to 600 days imprisonment and 5 years supervised probation. See id. Immigration documents note that Hernandez-Castillo was deported to Mexico on December 1, 2005. See Presentence Investigation Report ¶ 4, at 2 ("PSR").

On or about May 18, 2006, Immigration and Customs Enforcement ("ICE") agents encountered Hernandez-Castillo in Bernalillo County, New Mexico. See Indictment, filed July 11, 2006 (Doc. 11)("Indictment"); PSR ¶ 4, at 2. On September 5, 2006, Hernandez-Castillo pled guilty to a one count indictment charging re-entry of a removed alien in violation of 8 U.S.C. § 1326(a) and (b). See Plea Minute Sheet, filed September 5, 2006 (Doc. 17); Indictment.

Hernandez-Castillo's wife, Gloria Chavez, is a United States citizen, living in the United States. See Sentencing Memorandum at 2. Hernandez-Castillo has submitted medical records that indicate she has undergone several surgeries. See Sentencing Memorandum, Exhibit A, Letter from Dr. Sean D. Coston to Dr. Julian Rowe (dated August 15, 2005). Among other procedures, she has had a mastectomy and had her gall bladder removed. See Sentencing Memorandum at 2. Hernandez-Castillo represents that she is currently awaiting surgery, a laparotomy, to remove her intestine from the abdominal adhesions from which she suffers, that she has an inflamed liver, and is in constant pain. See id. Hernandez-Castillo acknowledges that Chavez does not appear to be in imminent danger of dying. See id.

Hernandez-Castillo represents that, after being deported to Mexico, he learned that his wife was dying. See id. He asserts that he wished to return to the United States, because he loved her

very much and desired to assist her emotionally and financially.  See id.

## PROCEDURAL BACKGROUND

In calculating Hernandez-Castillo's guideline sentence, the United States Probation Office ("USPO") incorporated a base offense level of eight, pursuant to U.S.S.G. § 2L1.2, and added sixteen levels because his 2005 felony conviction for criminal sexual penetration was a crime of violence, see U.S.S.G. § 2L1.2(b)(1)(A)(ii).  See PSR ¶¶ 9-10, at 3.  The USPO then subtracted three levels for Hernandez-Castillo's acceptance of responsibility under U.S.S.G. § 3E1.1.  See PSR ¶ 15, at 3. Hernandez-Castillo's adjusted offense level of twenty-one, combined with his criminal history category of IV, results in a guideline imprisonment range of fifty-seven to seventy-one months. Hernandez-Castillo moves the Court for a downward departure pursuant to U.S.S.G. § 5H1.6.  See Sentencing Memorandum at 1.  Alternatively, Hernandez-Castillo requests the Court vary from the guideline sentence consistent with its authority under United States v. Booker, 543 U.S. 296 (2005).

## LAW REGARDING GUIDELINE SENTENCES

The Supreme Court of the United States' holding in United States v. Booker "requires a sentencing court to consider Guideline ranges, but it permits the court to tailor the sentence in light of other statutory concerns as well." Id. at 245-46.  Under the new advisory Guidelines scheme, "district courts have a freer hand in determining sentences." United States v. Trujillo-Terrazas, 405 F.3d 814, 819 (10th Cir. 2005).  Thus, "while the Guidelines will exert gravitational pull on all sentencing decisions . . . district courts now have more discretion to tailor sentences to the individual circumstances of a defendant." Id.

Congress has directed sentencing courts to impose a sentence "sufficient, but not greater than necessary" to comply with four statutorily defined purposes enumerated in 18 U.S.C. § 3553(a)(2):

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. . . .

18 U.S.C. § 3553(a)(2)(A)-(D).  See 18 U.S.C. § 3551 ("[A] defendant who has been found guilty of an offense described in any Federal Statute . . . shall be sentenced in accordance with the provisions of this chapter so as to achieve the purposes set forth in subparagraphs (A) through (D) of section 3553(a)(2) to the extent that they are applicable in light of all the circumstances of the case.").  To achieve these purposes, 18 U.S.C. § 3553(a) directs sentencing courts to consider: (i) the Guidelines;  (ii) the nature of the offense and the defendant's character; (iii) the types of available sentences; (iv) a policy favoring uniformity in sentences for defendants who commit similar crimes; and (v) the need to provide restitution to victims.  See 18 U.S.C. § 3553(a)(1), (3)-(7).

Although the Guidelines are no longer mandatory, the United States Court of Appeals for the Tenth Circuit has clarified that, while the Guidelines are one of several factors enumerated in 18 U.S.C. § 3553(a), they are entitled to considerable deference.  See United States v. Cage, 451 F.3d 585, 593 (10th Cir. 2006)(describing the Guidelines as more than "just one factor among many").  They are significant because "the Guidelines are an expression of popular political will about sentencing that is entitled to due consideration . . . [and] represent at this point eighteen years' worth of careful consideration of the proper sentence for federal offenses."  Id. (internal quotations omitted).  See United States v. Kristl, 437 F.3d 1050, 1054 (10th Cir. 2006)(holding that sentences within the Guidelines' recommended range will be presumed reasonable).  In summation, a sentencing

-4-

court must now consider all the factors enumerated in 18 U.S.C. § 3553, including the Guidelines, and resolve conflicts between them; the Guidelines remain a highly significant factor in the court's analysis and sentences that fall within the Guidelines' range are presumptively reasonable.

Moreover, in Justice Breyer's remedial opinion in <u>United States v. Booker</u>, the Supreme Court recognized the important role that the advisory Guidelines continue to play in facilitating Congress' goal of achieving national uniformity of sentencing. <u>See</u> 543 U.S. at 246. To conform with Congressional intent, sentences must be "reasonable." <u>Id.</u> at 260-61. Consistent with that recognition, and the presumptive reasonableness of guideline sentences, the Tenth Circuit has adopted a two-step approach to reviewing criminal sentences for reasonableness. <u>See</u> <u>United States v. Kristl</u>, 437 F.3d at 1055. First, the Tenth Circuit reviews the district court's consideration of the applicable guideline range; if "the district court properly considered the relevant Guidelines range and sentenced the defendant within that range, the sentence is presumptively reasonable." <u>Id.</u> Second, once this presumption is established, the burden shifts to the defendant to demonstrate why the sentence is unreasonable in light of the other relevant sentencing factors. <u>See</u> <u>id.</u>

On the other hand, criminal sentences that vary materially from the properly calculated guideline sentencing range are not accorded a presumption of reasonableness. <u>See</u> <u>United States v. Cage</u>, 451 F.3d at 594-95. The Tenth Circuit has explained that the determination whether a sentence is reasonable depends on the strength of the correlation between the magnitude of the presence of the factors enumerated in 18 U.S.C. § 3553(a) and the extent of the district court's departure from the guideline sentence. <u>See</u> <u>id.</u>

## <u>ANALYSIS</u>

Hernandez-Castillo does not argue that the USPO has improperly calculated his guideline

sentence, but contends that, pursuant to U.S.S.G. § 5H1.6, his extraordinary family circumstances warrant a downward departure under the Guidelines.  Hernandez-Castillo also states that, because of reduced sentences that defendants who have been convicted of illegal reentry but who enter into Fast Track Plea Agreements receive, the imposition of a guideline sentence in his case would result in disparate sentences for similarly situated defendants.  Finally, Hernandez-Castillo contends that the statutory factors enumerated in 18 U.S.C. § 3553(a) applicable to this analysis counsel for a variance from the sentence the Guidelines recommend.

## I.      THE COURT WILL NOT GRANT A DOWNWARD DEPARTURE PURSUANT TO U.S.S.G. § 5H1.6.

Hernandez-Castillo contends that his wife's medical condition and his family's ties to the United States present extraordinary family circumstances that warrant a departure under U.S.S.G. § 5H1.6.  Under U.S.S.G. § 5H1.6, however, the court may make appropriate adjustments only if the defendant's family ties and responsibilities present an extreme circumstance that sets the defendant apart from others.  See United States v. Gauvin, 173 F.3d 798, 807 (10th Cir. 1999)("[A] district court may depart based on family circumstances 'only if the factor is present to an exceptional degree or in some other way makes the case different from the ordinary case where the factor is present.'")(quoting Koon v. United States, 518 U.S. 81, 96 (1996)).

The Guidelines state that "family ties and responsibilities . . . are not ordinarily relevant in determining whether a sentence should be outside the applicable guideline range."  U.S.S.G. § 5H1.6. In addition, when evaluating whether a downward departure is warranted based on the loss of caretaking or financial support for the defendant's family, the Court should consider if the defendant's service of a sentence within the applicable Guidelines' range may cause a substantial, direct, and

specific loss of essential care taking, or essential financial support, to the defendant's family.  See U.S.S.G. § 5H1.6 cmt. n.1(B)(i).

Hernandez-Castillo asserts that his case falls outside the heartland of cases, because he was motivated to return to the United States not by economics, but by his desire to be with his sick wife. See Sentencing Memorandum at 2.  Hernandez-Castillo cites the Court's sentencing decision in United States v. Trinidad-Toledo, No. CR06-1646 JB (D.N.M. 2006), and represents that his emotional, rather than economic, motive makes his case distinguishable.  In United States v. Trinidad-Toledo, the Court denied a downward departure under U.S.S.G. § 5H1.6 for a defendant that had left Mexico and reentered the United States illegally to earn money to pay medical expenses for his disabled wife who lived in Mexico.  See United States v. Trinidad-Toledo, No. CR 06-1646 JB, 2007 U.S. Dist. LEXIS 9261, at **13-14 (D.N.M. Jan. 16, 2007)(Browning, J.).  Hernandez-Castillo argues that "the desire to re-unite with and to aid in any way, a loved one who is suffering is tremendous," and therefore his pull to return to the United States was far stronger than the defendant's in United States v. Trinidad-Toledo.  Sentencing Memorandum at 2.

Hernandez-Castillo also analogizes his case to cases in other circuits that have acknowledged cultural assimilation as a legitimate basis for a downward departure.  See Sentencing Memorandum at 2-3 (citing United States v. Rodriguez-Montelongo, 263 F.3d 429, 433 (5th Cir. 2001)(holding cultural assimilation is a permissible basis for downward departure); United States v. Lipman, 133 F.3d 726, 730 (9th Cir. 1997)(noting that "the factor of cultural assimilation is akin to the factor of 'family and community ties' discussed under U.S.S.G. § 5H1.6," and holding that "a sentencing court may depart on the basis of cultural assimilation if it finds that the defendant's circumstances remove his case from the heartland of cases governed by the relevant individual guidelines and the Guidelines

as a whole").  The Tenth Circuit appears to have acknowledged that district courts may consider cultural assimilation in the context of extraordinary family ties as grounds for a downward departure. See United States v. Marquez-Olivas, 172 Fed. Appx. 855, 857 (10th Cir. 2006)(affirming district court's denial of defendant's motion for a downward departure based on cultural assimilation and extraordinary family ties); United States v. Alvarez-Alvarez, 158 Fed. Appx. 973, 975 (10th Cir. 2005)(same).  Nevertheless, the Tenth Circuit has indicated that departure on this basis requires "extraordinary circumstances."  United States v. Marquez-Olivas, 172 Fed. Appx. at 857.

In support of his request for a downward departure, Hernandez-Castillo cites several cases in which district courts found extraordinary circumstances related to the care of ill or young family members warranting a departure.  In United States v. Cabell, 890 F. Supp. 13 (D.D.C. 1995), the Honorable Charles R. Richey, United States District Judge for the District of Columbia, granted a defendant, who had been convicted for acting as a courier in a drug transaction, a downward departure in light of his responsibility to care for his deceased sister's two young children.  Judge Richey noted that the defendant was the only surviving sibling of his sister and that the two children were currently in the custody of their maternal grandmother -- a seventy-three year old woman who suffered from cancer and a weakened heart as a result of rheumatic fever.  See id. at 18.  In granting the departure, however, Judge Richey was careful to note that the defendant's family circumstances did not decrease his culpability, but only that he was "reluctant to wreak further destruction on the Defendant's family."  Id. at 19.  Judge Richey explained that "[t]he departure is not made on behalf of the Defendant himself, but on behalf of his family."  Id.

Similarly, in United States v. Spedden, 917 F. Supp. 404 (E.D. Va. 1996), the Honorable James C. Cacheris, United States District Judge for the Eastern District of Virginia, granted a

downward departure in a case where the defendant had presented evidence that both his wife and his nine year old daughter suffered from life-threatening medical conditions.  See id. at 406-07.  In granting a departure, Judge Cacheris reasoned that the defendant's case presented  "extraordinary and unique family circumstances," because "the actual family structure stands to be utterly decimated by the realistic possibility of the death of not one, but two immediate family members while the Defendant is incarcerated and unable to provide any normal, day-to-day parental assistance to sustain his family."  Id. at 408.  Judge Cacheris opined in United States v. Spedden that "the cumulative nature of two extraordinary medical hardships in the Defendant's immediate family makes this a case of sufficient importance and magnitude to justify a downward departure."  Id. (internal quotation omitted).

Finally, Hernandez-Castillo cites a Tenth Circuit case, United States v. Pena, 930 F.2d 1486 (10th Cir. 1991), in which the Tenth Circuit affirmed a district court's downward departure under U.S.S.G. § 5H1.6, because: (i) the defendant was the single parent of and sole provider for a two-month old child; and (ii) the defendant had been steadily employed and been providing financial support for her sixteen year old daughter, who was, herself, a single parent of a two-month old child. See id. at 1494.  The district court in United States v. Pena had explained that, "should the Defendant be incarcerated for an extended period of time, two infants would be placed at a potential risk."  Id.

In affirming the district court's departure in United States v. Pena, however, the Tenth Circuit emphasized the district court's supplemental findings that the defendant's offense of conviction was aberrational conduct.  The Tenth Circuit noted that "[i]mplicit in the district judge's findings is the conclusion that [the defendant's] behavior here was an aberration from her usual conduct, which reflected long-term employment, economic support for her family, no abuse of controlled substances,

and no prior involvement in the distribution of [narcotics]."  Id. at 1495.  The Tenth Circuit concluded that "[t]he aberrational character of her conduct, combined with her responsibility to support two infants, justified a departure."  Id. (emphasis added).

The United States counters that the extraordinary circumstances that existed in the cases Hernandez-Castillo cites are not present in his case.  The United States notes, and Hernandez-Castillo admits, that unlike the defendant's wife and daughter in United States v. Spedden, his wife -- although suffering from painful conditions -- is not in imminent danger of dying.  See Government's Answer to Defendant's Sentencing Memorandum and Motion for Sentencing Below Advisory Guideline Range filed January 29, 2007, filed February 6, 2007 (Doc. 29)("United States' Response");  Sentencing Memorandum at 2.  The United States also asserts that, unlike the young children in United States v. Cabell and United States v. Pena, Chavez has other family members who reside locally and assist in her care.  See United States' Response at 4; Transcript of Hearing at 12:4-6 (Brawley)("Transcript").[1]  The United States argues that, unfortunately, there are many defendants who have family members on both sides of the border, who have ill family members, and who wish to provide family members on either side economic and emotional assistance.  See Transcript at 12:1-3 (Brawley).

The Court believes that the focus of U.S.S.G. § 5H1.6 is on the loss of caretaking and financial support for the defendant's family that a defendant's incarceration would cause.  While the Court is not certain whether the Sentencing Commission specifically considered emotional assistance and caretaking, the Court acknowledges that support for an ill family member may manifest in forms

---

[1]The Court's citations to the transcript of the hearing refer to the Court Reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

other than, or in addition to, financial assistance.  Regardless, the Court acknowledges that Hernandez-Castillo's incarceration is likely to result in some loss of essential caretaking and/or financial support.

Nevertheless, even if a departure were authorized under the circumstances of this case, the Court would choose to exercise its discretion not to depart, because, despite the hardships that Hernandez-Castillo and his family face, it does not believe that his case falls outside of the heartland of cases that the Court, and other courts in this district and around the nation, routinely encounter. The Court notes that all families suffer and there is hardship whenever a sentence is imposed. Consequently, it has trouble distinguishing Hernandez-Castillo's case from the majority of criminal cases in which it must impose a sentence.  On the other hand, the Court believes that all of the cases Hernandez-Castillo has cited in which courts have found extraordinary circumstances are distinguishable.

The Court has also carefully reviewed it decision in <u>United States v. Trinidad-Toledo</u>, and analyzed the factual distinctions that Hernandez-Castillo references between that case and his own. Although the Court acknowledges that there are factual distinctions between the two cases, there are also similar motives that can be attributed to both defendants.  While Hernandez-Castillo's primary motive in returning to the United States might have been to be with his wife and provide her emotional comfort, the defendant in <u>United States v. Trinidad-Toledo</u> was also motivated by his love for his spouse and his desire to provide her assistance.  The Court cannot say that the pull to come to the United States was any stronger on Hernandez-Castillo than on the defendant in <u>United States v. Trinidad-Toledo</u> merely because his wife was ill in the United States as opposed to being ill in Mexico.

-11-

Nor does the Court believe that, to the extent district courts in the Tenth Circuit may grant a departure on the basis of cultural assimilation,  the American citizenship of Hernandez-Castillo's wife constitutes the extraordinary circumstances necessary to warrant such a departure.  Hernandez-Castillo has cited the United States Court of Appeals for the Ninth Circuit's decision in United States v. Lipman for the proposition that "cultural assimilation may be relevant to sentencing . . . if a district court finds that a defendant's unusual cultural ties to the United States -- rather than ordinary economic incentives -- provided the motivation for the defendant's illegal reentry."  133 F.3d at 731. In United States v. Lipman, however, the Ninth Circuit affirmed the district court's denial of a downward departure for a defendant convicted of illegal reentry -- and who indicated that he had returned to the United States to visit his disabled daughter after he learned that she had been sexually assaulted --  despite that the defendant had arrived in the United States at the age of twelve and lived in the country for twenty-three years, had been educated in the New York public schools through high school, had married a United States citizen, and had seven children that were United States citizens.  See id. at 728-29.  The Court notes that the Tenth Circuit has affirmed district courts exercising their discretion to reach similar results.  See United States v. Alvarez-Alvarez, 158 Fed. Appx. at 975-77 (affirming district court's denial of a downward departure for a defendant who moved to the United States when he was less than one year old, attended school in the United States, spoke fluent English, had siblings who were United States citizens, had parents who were legal residents in the United States, and had four children who were United States citizens).

Under the Guidelines, "family ties and responsibilities . . . are not ordinarily relevant in determining whether a sentence should be outside the applicable guideline range."  U.S.S.G. § 5H1.6. Even if a departure were authorized in this case, however, the Court does not believe that the

extraordinary circumstances required to establish an exception to this general rule are present in Hernandez-Castillo's case. In any case, the Court would exercise its discretion not to depart downward, because Hernandez-Castillo's case remains within the heartland of federal illegal re-entry cases. The Court will not grant a downward departure under the Guidelines.

## II.   A DOWNWARD DEPARTURE UNDER THE GUIDELINES IS NOT NEEDED TO PREVENT A DISPARITY IN SENTENCING AMONG SIMILARLY SITUATED DEFENDANTS.

Hernandez-Castillo requests the Court grant him a downward departure under the Guidelines to compensate for sentencing disparities between himself and similarly situated defendants who have pled guilty to illegal re-entry, but who did so under the United States Attorney's Fast-Track Program in exchange for shorter sentences. See Sentencing Memorandum at 4. Hernandez-Castillo argues that, just like defendants who enter into fast-track agreements, he has also waived his right to have a grand jury indict him, a preliminary hearing, and a jury trial, but, unlike defendants who enter into fast track agreements, he has not received any corresponding benefit for surrendering those rights. See id. (citing U.S.S.G. § 5K3.1 (allowing a downward departure of not more than four levels for defendants who are prosecuted through early disposition programs)); Transcript at 9:1-7 (Katze).

Notwithstanding Hernandez-Castillo's argument, Congress has endorsed the policy underlying fast-track programs by authorizing district courts to grant a downward departure of no more than four levels if a defendant pleads guilty pursuant to such a program. See PROTECT ACT § 401(m)(2)(B), 108 Pub. L. No. 21, 117 Stat. 650, 675. While Hernandez-Castillo has cited to U.S.S.G. § 5K3.1, he has not pointed to any guideline that would authorize a "fast-track" departure in his case, and the Court believes that it would be inappropriate to confer upon him the benefit of the fast-track program without him entering into a fast-track agreement. Furthermore, the Court does

-13-

not believe that Hernandez-Castillo is similarly situated to those defendants that enter into fast track agreements.  Unlike fast track defendants, Hernandez-Castillo retains his right to appeal and to collaterally attack his conviction.

The Court believes that Hernandez-Castillo is more accurately characterized as being similarly situated to those defendants convicted of reentry after having previously been convicted of a crime of violence -- defendants to whom the fast-track program is not available.  See United States' Response at 5; Transcript at 12:20-22 (Brawley); United States Attorney for the District of New Mexico's Fast Track Programs, Illegal Re-entry After Deportation Cases, at 1 (on file with the Court).  Accordingly, the Court does not believe that a downward departure based on the disparate sentences fast-track plea agreements may cause is appropriate in this case.

## III.   THE COURT WILL NOT GRANT A VARIANCE FROM THE GUIDELINE SENTENCE.

Hernandez-Castillo argues that the Court should vary from the sentence the Court has calculated under the Guidelines.  Hernandez-Castillo contends the facts and circumstances surrounding his case warrant a variance.  Specifically, Hernandez-Castillo contends that the extraordinary nature of his family ties and circumstances counsel for a variance, and that the imposition of a guideline sentence would create sentencing disparities between similarly situated defendants.  The Court disagrees.  The Court has carefully considered not only the Guidelines, but also the other 18 U.S.C. § 3553(a) factors applicable to its sentencing analysis, and believes that a guideline sentence is both reasonable and is sufficient, without being greater than necessary, to achieve federal sentencing goals.

A.      **THE NATURE AND CIRCUMSTANCES OF THE OFFENSE AND CHARACTERISTICS OF THE OFFENDER.**

While there is a tendency for defendants to characterize illegal reentry as a minor crime, Congress and the Sentencing Commission have signaled otherwise with the serious penalties they have assigned to the crime. The eight-level, twelve-level, and sixteen-level enhancements, see U.S.S.G. § 2L1.2(b)(1)(A)-(C), place the crime squarely within Zone D on the Sentencing Table. Moreover, Hernandez Castillo's history and characteristics are not so extraordinary or unusual that they counsel for a variance from the guideline sentence.

1.      **The Nature and Circumstances of the Offense.**

Hernandez-Castillo argues that illegal reentry after having been convicted for an aggravated felony is not a particularly serious crime, because it is tantamount to a trespass. See Sentencing Memorandum at 5-6. He notes that the offense did not involve any violence and that he did not employ any weapons in committing the offense. See id. at 6. Hernandez-Castillo states that his wife was seriously ill and that he returned to the United States to care for her. See id.

The Court does not find Hernandez-Castillo's argument persuasive. Congress, as the elected branch of government, has decided that the crime with which Hernandez-Castillo is charged is a serious offense. See 8 U.S.C. § 1326(b)(2) (authorizing up to twenty years imprisonment for illegal reentry). Policy decisions are best left with the legislative branch. More important, Hernandez-Castillo's suggestion that his crime is not serious disregards the seriousness of his 2005 conviction for criminal sexual penetration and the violent nature of that offense; the Court notes that it is this offense -- which results in a sixteen-level addition to his base offense level -- and not his illegal reentry, which constitutes the basis for the significant enhancement in his guideline sentence. The

-15-

Court does not believe that the nature and circumstances of the offense counsel for a variance from the guideline sentence.

**2.      History and Characteristics of the Defendant.**

Hernandez-Castillo argues that, even if his personal family circumstances do not warrant a downward departure under the Guidelines, they do counsel for a variance from the guideline sentence consistent with the Court's authority under United States v. Booker.  Hernandez-Castillo has cited a case from the United States Court of Appeals for the Sixth Circuit and one from a district court within the United States Court of Appeals for the Seventh Circuit that suggest family circumstances are a factor that a sentencing court may consider in its analysis under United States v. Booker.  See Sentencing Memorandum at 3 (citing United States v. Bernal-Aveja, 414 F.3d 625, 628-29 (6th Cir. 2005)(remanding to district court for consideration of whether defendant's explanation that he reentered the United States to be closer to his four American-born children residing in Ohio warranted a variance); United States v. Galvez-Barrios, 355 F. Supp. 2d 958, 964 (E.D. Wisc. 2005)(granting a variance from the guideline sentence, because, in part, the court "considered it significant that defendant returned to the United States to be with and support his family, not to commit crimes or for purely economic reasons").

The Court agrees that a defendant's family circumstances may reflect upon his personal characteristics in a manner that becomes relevant to sentencing.  The Court has already found, however, that Hernandez-Castillo's family circumstances are not so extraordinary as to materially set him apart from the majority of other defendants convicted of illegal reentry after having been convicted of a felony.  The Court does not want to improperly minimize the significance of Hernandez-Castillo's wife's illness, and does not question the sincerity of his concern for her

-16-

condition, but it is not convinced that this factor, alone, justifies a variance from the guideline sentence.

In reaching its conclusion, the Court notes that each of the cases Hernandez-Castillo cites in which courts have adjusted a defendant's sentence based on extraordinary circumstances contains an additional factual element that distinguishes it from his case. In <u>United States v. Cabell</u>, Judge Richey explained that the defendant was the only caretaker for two small children, and that his downward departure was "not made on behalf of the Defendant himself, but on behalf of his family." 890 F. Supp. at 19. Hernandez-Castillo has not alleged that he is the only individual capable of caring for his wife. To the contrary, Chavez has four children who reside in Albuquerque, at least some of whom assist her financially. <u>See</u> PSR ¶ 27, at 7. Hernandez-Castillo has also submitted copious medical records indicating that she has been receiving medical attention. <u>See</u> Sentencing Memorandum, Exhibit A.

In <u>United States v. Spedden</u>, Judge Cacheris explained that the realistic possibility of both the defendant's wife and daughter dying imminently justified a reduced sentence. In contrast, Hernandez-Castillo has acknowledged that his wife does not appear to be in any imminent danger of dying. <u>See</u> Sentencing Memorandum at 2. Although the Court empathizes with the challenges Hernandez-Castillo and his family face, he has not presented evidence that "the actual family structure stands to be utterly decimated . . . while [he] is incarcerated and unable to provide any normal, day-to-day parental assistance to sustain his family." <u>United States v. Spedden</u>, 917 F. Supp. at 408.

Finally, in <u>United States v. Pena</u>, the Tenth Circuit explained that the district court's grant of a sentence reduction based on family obligations was buttressed by its conclusion that "[t]he aberrational character of her conduct, combined with her responsibility to support two infants,

-17-

justified a departure." 930 F.2d at 1495.  Unlike the defendant in United States v. Pena, Hernandez-Castillo does not argue that his past is devoid of criminal or otherwise inappropriate conduct.  Indeed, a prior felony conviction is an element of his offense of conviction.

In sum, the Court is not convinced that Hernandez-Castillo's personal characteristics and/or his family circumstances are sufficient to justify a variance from the presumptively reasonable guideline sentence.  Hernandez-Castillo's personal history and his family situation is not significantly different from many defendants charged with illegally re-entering the United States after deportation. Many of the defendants charged with reentry crimes have prior convictions, prior deportations, or both, and many have family, including immediate family, in the United States.  Hernandez-Castillo's personal history and characteristics do not counsel for a variance.

**B.      THE NEED FOR THE SENTENCE IMPOSED TO PROMOTE CERTAIN STATUTORY OBJECTIVES, INCLUDING RESPECT FOR THE LAW, TO PROVIDE JUST PUNISHMENT, ADEQUATE DETERRENCE, AND TO PROTECT THE PUBLIC FROM FURTHER CRIMES OF THE DEFENDANT.**

Hernandez-Castillo has not demonstrated that he can overcome the presumption of reasonableness that will attach to a sentence within the advisory sentencing guideline range. Hernandez-Castillo has not convincingly explained in what manner his case is unique from other defendants convicted of illegal reentry or why the guideline sentence is greater than necessary to comply with federal sentencing goals.

Among other objectives, the Court's sentence should promote respect for the law, provide just punishment, and provide adequate deterrence to both the defendant and to the public at large. Hernandez-Castillo asserts that a lengthy sentence is not necessary to achieve these goals, because, given that he will be deported once he is released from custody, he will continue to be away from his

-18-

ill wife and "this is punishment enough for trespassing into the United States." Sentencing Memorandum at 6. He argues that, even if imprisonment is a deterrent adequate to overcome an individual's desire to be with his ill wife, "isn't 24 months deterrent enough?" Id. Finally, he contends that, given his motivation for returning to the United States, incarceration is not necessary to protect the public. See id.

The Court does not believe that a variance would promote respect for the law or provide just punishment. The Court believes that Hernandez-Castillo's crime of offense is more than just a trespass and, in light of Congress' judgment with respect to re-entry crimes and the seriousness of his 2005 conviction for criminal sexual penetration, believes a guideline sentence is necessary to reflect the serious nature of his conduct. Nor does the Court believe that a variance would provide adequate deterrence to Hernandez-Castillo or to the public at large. Hernandez-Castillo's previous entanglements with the legal system -- for a very serious offense -- have unfortunately not dissuaded him from reentering the United State illegally.

Hernandez-Castillo expresses doubt that his reentering the United States harms the public. See Sentencing Memorandum at 6. Hernandez-Castillo does not account, however, for the underlying violent felony that constitutes one of the primary elements of his offense of conviction. In light of his 2005 conviction for criminal sexual penetration, the Court believes that, to protect the public, it may be necessary to impose a sentence consistent with what Congress and the Sentencing Commission envisioned under the Guidelines. In any case, the grounds that Hernandez-Castillo advances do not justify a variance.

## C.   A VARIANCE IS NOT NEEDED TO ADVANCE VOCATIONAL OBJECTIVES OR TO PREVENT A DISPARITY IN SENTENCING.

The Court is also concerned about the need to avoid unwarranted sentencing disparities between defendants who have committed similar crimes.  Hernandez-Castillo argues that, as a deportable alien, his sentence will be harsher than most, because he: (i) will not be eligible for early release; (ii) will not be able to serve his sentence in a minimum security facility; (iii) may not qualify for release credits for participating in drug or alcohol abuse programs while serving his sentence; and (iv) will not be able to finish service of his sentence in a halfway house.  See Sentencing Memorandum at 5.  He also argues that, to the limited extent that he may have access to BOP educational programs while incarcerated, the programs' lack of applicability to his life in Mexico and the serious economic crisis in that country undermine the value of those programs to him.  See id. at 7.

While the Court has carefully considered the arguments that Hernandez-Castillo has made in support of his request for a variance from the guideline sentence, most defendants charged with illegally re-entering the United States after deportation could make arguments similar to the ones that Hernandez-Castillo makes.  Hernandez-Castillo has not presented evidence or demonstrated unique facts that suggest to the Court it should treat his case differently from the regrettably high number of defendants that come before it charged with the same crime as Hernandez-Castillo.

The Court will impose a sentence within the range the Guidelines recommend.  The Court is obligated to impose a reasonable sentence that is sufficient without being greater than necessary to achieve federal sentencing goals.  Hernandez-Castillo has not overcome the presumption of reasonableness that attaches to a sentence within the advisory sentencing guideline range or

adequately explained why a guideline sentence would be greater than necessary to satisfy the statutory objectives Congress has identified in 18 U.S.C. § 3553(a).

**IT IS ORDERED** that the Defendant's Motion for Downward Departure is denied. Hernandez-Castillo's request for a variance from the sentence the Guidelines recommend is denied.

_____
UNITED STATES DISTRICT JUDGE

_Counsel:_

Larry Gomez
  Acting United States Attorney for the
    District of New Mexico
William J. Pflugrath
  Assistant United States Attorney
Albuquerque, New Mexico

        _Attorney for the Plaintiff_

Margaret A. Katze
  Assistant Federal Public Defender
Albuquerque, New Mexico

        _Attorney for the Defendant_